UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 2, ) ) ) ) | |
| Plaintiff, ) ) | |
| v.  ) ) | No. 1:07-cv-02124-RWR |
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, ) ) ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL**

Plaintiff Office & Professional Employees International Union, Local 2 (hereinafter Local 2) replies to the May 5, 2008 response of Defendant Sheet Metal Workers International Union (hereinafter SMWIA) to Local 2's Motion for Voluntary Dismissal.   Local 2 moved for voluntary dismissal on May 2, 2008; SMWIA opposes voluntary dismissal unless it is conditioned on Local 2's payment of its costs and attorney fees.  In support of its position, SMWIA argues that the underlying suit was frivolous, and that this gives rise to an inference that the suit was brought in bad faith.  SMWIA's May 5 Reply at p. 4.  As will be shown below, Local 2 had valid and good faith basis to bring this suit, and the extraordinary remedy of charging Defendant's attorney fees is not warranted.  As set forth below, the Arbitration Award at issue (hereinafter the Award) involved arbitral departure from the express language of the agreement, and exceeding of the Arbitrator's authority under the Agreement, and accordingly there was and is valid and good faith basis for Local 2's position that vacation of the award was

warranted, and for Local 2's bringing the present suit. As further discussed below, while this Circuit does maintain perhaps the most deferential standard for review of labor arbitration awards, many other Circuits, and on occasion this District Court, have vacated arbitration awards for failure to honor express contract language similar to what occurred in the Award at issue here. While Local 2 did move to voluntarily dismiss at the time summary judgment motions were due, this decision was not based on any improper motivation, but rather was based on Local 2's ultimate conclusion that this Circuit's standard of review of labor arbitrations is, on balance, favorable to Local 2's institutional interests, and therefore an attack on such standard of review by Local 2 would not be in the overall interests of Local 2's members.

**FACTUAL BACKGROUND**

The salient facts are generally set out in the Award, which is Exhibit 2 to SMWIA's May 5 filing. The Parties entered into a new Collective Bargaining Agreement effective October 1, 2005 ( hereinafter the "Agreement"), but actually the result of negotiations which concluded in agreement on its terms on November 10, 2005. The CBA set out a new term allowing employees to select and work any of a number of "alternative work schedules" or "alternative shifts" described in the Agreement. Under these alternative shifts an employee could expand her hours from the 35 hour regular work week to 80 hours over a two-week span; one variety of alternative schedule also allowed the employee to work the 80 hours in 9 work days, allowing a weekday off every other week. The employees, being hourly paid, could increase their pay by working the additional 10 hours every two weeks.

In December 2005 the options of the alternative shifts were made available, and each of the employees chose an alternative shift. This situation prevailed until June 20, 2006, when a newly appointed Secretary Treasurer for the Employer gave Local 2 and the employees written notice that "due to departmental and business needs, any and all alternative work schedules will cease at the end of the work day on Friday, July 28, 2006". The letter cited to the Agreement's Article V—HOURS OF WORK-OVERTIME, Section A, and its subsection headed "Establishment Or Change of Hours".

While that subsection contains two paragraphs, the Arbitrator ultimately ruled that the first paragraph applied only to the initial set up of an employee's alternative shift, and the that second, one sentence, paragraph controlled the issue of elimination of an alternative shift, or shifts. That language of the Agreement provides "If a departmental need arises that would **require** a change in the alternative scheduled work week, back to the regular work schedule, the Employer shall provide ten (10) working days notice to the employee." (Emphasis added). Award at p. 3, 13.

The Arbitrator's Award gave no effect to the language of the Labor Agreement requiring that the Employer have "departmental needs" "**requiring**" a return to the regular schedule. (emphasis added). Rather the Arbitrator concluded that the Agreement required Local 2 to demonstrate that the Employer did not have any "reasonable basis", or any "need" to take the disputed action in order to show a violation of the Agreement, and that the Employer had complied with the Agreement by showing some "departmental need" for its action. Award at p. 17. Accordingly, the Award denied the grievance. Id. The instant petition to vacate followed,

based on the Award "subtract(ing) language from the Agreement" and "ignor(ing) the plain language of the agreement". Complaint, para. 16. The Complaint also noted that the Agreement provided that an arbitrator "shall have no authority to change, amend, add to or subtract from" any of its provisions. Complaint, para. 15; Answer para. 15. Thus the Complaint pleaded that the Arbitrator "acted outside the scope of his authority.

**ARGUMENT**

Local 2 has been mindful of the nature of review that the courts, and in particular this Court and this Circuit apply to labor arbitration awards. The complaint here has been that the one provision of the Agreement, the single sentence of the Agreement that the Award found controlling, was edited so as to drastically change that controlling test set out in the Agreement. The Award entirely excused the Employer from its obligation under the Agreement to demonstrate that the "departmental need" it relied upon to make the change somehow "require(d)" that change. By doing so, it overstepped the authority granted to the Arbitrator, which specified he was to "have no authority to **change**, amend, add to, or **subtract from** any of the provisions" of the Agreement.

The Award's refusal to give any effect to the plain contract language that the Employer must show a departmental need **requiring** the schedule change is underscored by the Award's acknowledgement that this language is equivalent to and redundant to the language in the same subsection of the Agreement providing that the Employer must show "**business necessity**" to deny an employee's schedule request. Award, p. 13 and fn. 5. Thus the Arbitrator

acknowledged that the term "require" means and equals "necessitates"; he simply chose to ignore that contract language and, effectively, write it out of the contract in his Award.

As set out in SMWIA's May 5 filing, this Circuit generally applies the broad and, frankly, nebulous test of whether an arbitration award "draws its essence" from the parties' contract in reviewing such awards. SMWIA May 5 filing at p. 3-4; SMWIA Exh. 1 at p. 7-8. However, many other Circuits adhere to a somewhat stricter standard of review whereby refusal of an arbitrator to honor plain language of the applicable contract will warrant vacating an arbitration award.

The standard of review used by this Circuit was initially broadly stated in United Steelworkers of America v. Enterprise Wheel and Car Corp. 363 U.S. 593, 597 (1960): "…an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When an arbitrator's words manifest an infidelity to this obligation, courts have not choice but to refuse enforcement of the award." This remains the primary basis of this Circuit's standard of review. The decision in United Paperworkers v. Misco, Inc., 484 U.S. 29, 36, (1987) expounded on this test and provided additional specificity. Misco repeated that the test was whether the award "draws its essence" from the labor agreement and is not the arbitrator's "own brand of industrial justice." Id, p. 36. However, Misco went on to provide a more specific requirement that an arbitrator "may not misread the plain language of the contract". Id, p. 38. The decision in Major League Baseball Players

Assn. v. Garvey, 532 U.S. 504, 509 (2001), although it dealt with a review of the factual findings of an arbitrator rather than an arbitrator's contract analysis or lack thereof, likewise specified that this test required a decision grounded in the labor agreement and in the authority vested in the arbitrator: "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his award may be unenforceable." (citations and internal quotations omitted). Thus failing to apply the contract, as written, amounts to an arbitrator "dispensing his own brand of industrial justice", so as to warrant vacating an award.

Thus this District Court has on occasion concluded that failure to follow express contract language amounts to the arbitrator exceeding his authority and warrants vacating the resulting award. Communications Workers of America v. American Telephone & Telegraph Co., 903 F.Supp. 3 (D.D.C. 1995). This is, in fact, part of the general standard of review applied by many other Circuits. Thus the Second Circuit holds that an arbitrator exceeds his authority if he does not adhere to the contract as written or to the parties' submission of the question. 187 Concourse Associates v. Fishman, 399 F.3d 524, 527 (2005). The Third Circuit holds that "an arbitrator's opinion and award based on general considerations of fairness and equity as opposed to the exact terms of the CBA fails to derive its essence from the CBA." CITGO Asphalt Refining Co. v. Local 2-991, 385 F.3d 809, 817 (2004). (citation and internal quotes omitted). The Fourth Circuit has long held and continues to hold that an award may not be contrary to express contract language. Clinchfield Coal. Coal. v. United Mine Workers Dist. 28, 720 F.2d 1365, 1372 (1983). The Fifth Circuit holds that "the rule in this circuit and the emerging trend among other courts of appeals is that arbitral action contrary to express contractual provisions will not be

respected". Houston Lighting & Power Co. v. Internatl. Brotherhood of Elec. Workers Local 66U, 71 F.3d 179, 182 (1995) (internal quotations and cites omitted). Or, as more recently restated in Beaird Industries v. Auto Workers Local 2297, 404 F.3d 942 (2005), "it is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contract provisions."  The Sixth Circuit for many years specified that an arbitration award failed to draw its essence from the contract if "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." Cement Divs., Natl Gypsum Co. v. United Steelworkers, Local 135, 793 F2d 759, 766 (1986); overruled in Michigan Family Resources v. Service Employees, Local 517M , 475 F.3d 746 (2007, en banc)   The Ninth Circuit holds that "an arbitrator may not ignore the plain language of the contract by relying on an interpretation that is not plausible and instead follow his own whims and biases.  In such cases the arbitral award will fail to draw its essence from the collective bargaining agreement."  Hawaii Teamsters Local 996 v. United Parcel Service, 229 F.3d 847, 851 ( 2000) ( internal quotations and citations omitted).   The Tenth Circuit will vacate an arbitration award if "it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in light of its language, its context, and any other indicia of the parties' intention, it is without rational support." Local No. 7, United Food &  Commercial Workers Internatl Union v. King Soopers, Inc., 222 F.3d 1223, 1227 (2000).

And leading arbitrators also understand that failure to apply express contract language warrants vacating their award: "The courts should enforce any award unless it (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided in the agreement, or (3) is not rationally supported or derived from the agreement."  Arbitrator Charles Coleman and Prof. Gerald Coleman, "Constructing a New Paradigm of Labor Arbitration", in Carbonneau and McConnaughay, Ed., <u>American Arbitration Association Handbook on Labor Arbitration</u>, 2007, p. 255.

Here the Arbitrator had no authority to edit the Agreement, and was expressly denied such authority by the Agreement.  Nevertheless, the Award chose one sentence from the Agreement, which was held to control the outcome of the issue, and then proceeded to remove an essential requirement contained in that very same controlling sentence.  By so doing, the Arbitrator failed to "act within the scope of his authority", "stray(ed) from interpretation and application of the agreement" and thereby "dispens(ed) his own brand of industrial justice."  The Award specifically states the governing test for the change was "departmental needs".  In doing so it made no effort to define how such "departmental needs" must be shown to "require" the disputed change, instead holding that **any** "need" would be a "reasonable basis" for such a change.  Award at p. 17.  This is not "arguably construing" the contract; it is a departure from the express terms of the contract,

Plainly, this Petition to Vacate was not, and is not, frivolous.  There is ample basis for Local 2's belief that the Award here exceeded the arbitrator's powers, did not draw its essence from the Agreements, and should have been vacated.

Nonetheless, in preparing this matter for summary judgment, Local 2 came to agree with the concurrence in the panel decision in <u>Michigan Family Resources</u>, 438 F.3d 653 (2006) that preceded and apparently led to the en banc overrule of that line of Sixth Circuit cases. Local 2 concluded that the broad standard of review applied in this Circuit favors Local 2's ongoing interests in effective representation of its members, notwithstanding the serious adverse effects on certain of its members of the flawed and erroneous Award at issue here. In determining the best outcome for the largest number of its members, Local 2 concluded that the concerns set out in Complaint para. 8 were outweighed by such considerations as were advanced in <u>Office & Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority</u>, 724 F.2d 133, 137-39 (D.C. Cir. 1983) or <u>Office & Professional Employees International Union, Local 2 v. National Football Players Asscn.</u>, 947 F.Supp. 540, 545-46 (D.D.C. 1996). In this regard, Local 2's recent experience in another Circuit where a more searching standard of review was created and applied further supported Local 2's ultimate decision to avoid arguing for a stricter standard in this Circuit. <u>Washington Metropolitan Area Transit Authority v. Office & Professional Employees International Union, Local 2</u>, 465 F.3d 151 (4th Cir. 2006).

Thus Local 2 had a reasonable basis to bring the instant suit. Local 2's decision to forego proceeding with this suit was not made for any bad faith consideration, but was a reasoned decision based on careful weighing of the relative interests of Local 2's entire membership.

Lastly, it must be noted that several of SMWIA's present arguments do not withstand close scrutiny.  SMWIA complains that Local 2 acted to drop this case when SMWIA was ready to make a filing.  However it is not clear how this was worse for SMWIA than if Local 2 had continued to pursue this matter throughout the entire briefing schedule.  SMWIA complains that it was burdened by the need to prepare its filing, but alleges that the underlying complaint was frivolous.  This begs the question as to how burdensome it should be for skilled and experienced counsel to deal with a matter that is deemed frivolous.   And the SMWIA's reliance on <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991) does little for its claim for attorney fees and costs.  In <u>Chambers</u> the inherent power of the court to grant such a remedy rested upon a party engaging in fraud upon the court, demonstrated bad faith to both the court and the other party, false and frivolous pleadings, and demonstrated delay, oppression and harassment.  Nothing of such nature is present here, even remotely.

For all of the above reasons, the SMWIA request for costs and attorney fees set out in its May 5, 2008 filing lacks merit, and the Court is respectfully requested to grant Local 2's Motion for Voluntary Dismissal, with each Party to bear its own costs and attorney fees.

Respectfully submitted,

    /s/  David R. Levinson
DAVID R. LEVINSON
DC Bar # 425176
1320 19th Street, N.W.
Suite 601
Washington, DC  20036
(202) 223-3434

*Counsel for Plaintiff*